O'CONNOR PLAYDON GUBEN & INOUYE LLP
A LIMITED LIABILITY LAW PARTNERSHIP

JERROLD K. GUBEN     3107-0
733 Bishop Street, Suite 2400
Honolulu, Hawaii 96813
Telephone: (808) 524-8350
Facsimile:  (808) 531-8628
JKG@opgilaw.com

Attorney for Plan Proponents
AGU PLUS, LLC and AGU-V, INC.

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>AGUPLUS, LLC,<br><br>    Debtor and<br>    Debtor-in-Possession. | Case No. 19-01529<br>Case No. 19-01530<br>(Chapter 11)<br>(Jointly Administered) |
| In re<br><br>AGU-V, INC.,<br><br>    Debtor and<br>    Debtor-in-Possession. | Judge: Honorable Robert J. Faris |

## DISCLOSURE STATEMENT FOR DEBTORS' JOINT CHAPTER 11 LIQUIDATING PLAN DATED NOVEMBER 23, 2020

This Disclosure Statement ("Disclosure Statement") relates to the

accompanying Debtors' Joint Chapter 11 Liquidating Plan dated November 23, 2020

("Plan").  The Plan proposes to restructure the financial affairs of AguPlus, LLC

606515v1\19-110\JKG
8140668 4

("AguPlus") and Agu-V, Inc. ("Agu-V"), through the formation of a Liquidation Trust for the benefit of creditors. You may be entitled to vote on the Plan.

The voting rules are explained below, along with a summary of the Plan and other relevant information. This Disclosure Statement is explanatory only. The Plan will be the binding document, if it is confirmed by the court.

YOUR RIGHTS MAY BE AFFECTED. READ THIS DISCLOSURE STATEMENT AND THE PLAN CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE). DEFINITIONS AND RULES OF CONSTRUCTION ARE AS SET FORTH BELOW AND IN THE PLAN.

## I. BACKGROUND[1]

### A. Brief History of the Company

AguPlus is a Hawaii limited liability company that registered with the State of Hawaii Department of Commerce and Consumer Affairs ("DCCA") to do business as a Japanese ramen restaurant in the State of Hawai'i on May 24, 2013.[2]

---

[1] Drawn in part from the *First Amended Complaint* in the case of *Hannan Ribiyou Kabushikigaisha v. Personal Representative of the Estate of Hisashi Teddy Uehara, et al., Civil No. 20-0000198* (First Circuit, State of Hawaii).

[2] AGUPlus was originally registered under the name Je Rei Hu, LLC. Thereafter, on June 27, 2013, the company was renamed Buzinkus, LLC. On August 12, 2016, the company was renamed AguPlus, LLC.

U.S. Bankruptcy Court - Hawaii #19-01529 Dkt # 411 Filed 11/23/20 Page 2 of 41

The man behind the concept of the Agu ramen restaurants was Hisashi Uehara ("Uehara"), who was born in Okinawa, Japan, and moved to Hawai'i at the age of 14. Uehara told people that he learned to cook from his mother and grandmother in Japan and had researched how to make ramen by tasting various types of ramen from Hokkaido to Kyushu.

In 2013, Hisashi opened his first ramen shop at 925 Isenberg Street, Honolulu, Hawaii 96826 ("Isenberg Restaurant"). The Isenberg Restaurant was modeled after ramen shops found in in Japan. Uehara claimed that all of the ingredients for the ramen were ordered from Japan. Whether or not that statement was true, the business was immediately successful.

After opening the Isenberg Restaurant, AguPlus would go on to open 5 more restaurants in Honolulu located at 1200 Ala Moana Blvd., Suite 657, Honolulu, Hawaii 96814 ("Ward Restaurant"), 590 Farrington Hwy #524, Kapolei, Hawaii 96707 ("Kapolei Restaurant"), Suite 2054, 1450 Ala Moana Blvd., Second Floor, Honolulu, Hawaii 96814 ("Ala Moana Restaurant"), 2146 Kalakaua Avenue, #101, Honolulu, Hawaii 96815 ("Waikiki Restaurant"), and 98-1005 Moanalua Road, #545, Aiea Hawaii 96701 ("Pearlridge Restaurant"). In addition, AguPlus rented space at 2300 N King St., Suite 101, Honolulu, Hawaii 96819 as a central kitchen where all of the ramen dishes were prepared and sent to the various locations.

U.S. Bankruptcy Court - Hawaii  #19-01529   Dkt # 411   Filed 11/23/20   Page 3 of 41

Uehara held himself out to the public as the "owner" of the Agu ramen restaurants although that was not true.

On July 28, 2016, after meetings with Uehara and attorney Grant Kidani ("Kidani"), hearing about the initial success of his restaurants, and hearing about Uehara's plans to expand his ramen shops across the U.S. mainland, a Japanese company named Hannan Ribiyou Kabushikigaisha ("Hannan") decided to acquire a 60% membership interest in AguPlus pursuant to the *Buzinkus, LLC Member Interest Purchase Agreement*.[3] The minority 40% member of AguPlus was Agu Ramen, LLC, a Texas limited liability company which was 100% owned by Uehara. Uehara was the appointed as Manager of AguPlus while Hannan was a passive investor and lender.

In 2016, AguPlus registered the service mark "Agu a ramen bistro" and embarked on opening 3 Agu Ramen locations in the Houston, Texas area and 6 other locations across Texas, including at Mockingbird Avenue in Dallas.

From 2014 to 2018, AguPlus won numerous culinary awards in Hawaii; including, but not limited to, being a multiple-time recipient of the prestigious

---

[3] Pursuant to that certain *Capital Infusion Agreement* dated December 31, 2018 ("Capital Infusion Agreement"), Hannan made a further equity investment of $1,401,820.00 into AguPlus and, by agreement, increased its membership interest to 90% thereby diluting Agu Ramen LLC's membership interest to 10%.

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 4 of 41

Honolulu Magazine Hale Aina Awards. By the end of 2018, Agu Plus had expanded to having approximately 14 stores, 7 in Hawaii and 7 in Texas. [4]

In February 2018, Hannan loaned AguPlus the sum of $1.0 million pursuant to a promissory note for the purposes of providing necessary working capital to keep AguPlus' business operating.

In May 2018, Hannan entered into the *Iyo Stock Purchase Agreement* and sold the stock of the entity now known as Agu-V, Inc. to AguPlus, which owned the real property located at 4490 Pahoa Avenue, Honolulu, Hawaii (the "Kahala Property") valued at over $1,650,000. Under the Iyo Stock Purchase Agreement, Hannan received a promissory note back from AguPlus for $1,630,000.

In the first few months of 2019, AguPlus had again run out of money and Uehara approached Hannan for another loan. Hannan decided not to loan or invest any more money into the business because of Uehara's failed management. Hannan knew that Uehara had over-expanded too quickly, but did not know the full extent of the fraud and self-dealing in which Uehara engaged in with others. Despite Hannan's instruction to Uehara to cease any further expansion, Uehara proceeded to attempt to start competing businesses under his own control in Cupertino, California;

---

[4] The Texas locations included, Washington Avenue, Houston, TX; Lone Star Drive, Sugar Land, TX; Mockingbird Lane, Dallas, TX; Wilcrest Green Drive, Houston, TX; Elridge Parkway, Houston, TX; Westheimer Road, Houston, TX; NASA Parkway, Houston, TX; Mason Road, Katy, TX; Cinco Ranch Boulevard, Katy, TX; and Wilcrest Green Drive, Houston, TX.

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 5 of 41

Seoul, South Korea, the Philippines, Japan, Taiwan, Vietnam and Canada with the assistance of others, using the intellectual property of AguPlus and the money that had been loaned by Hannan and Finance Factors, Limited, as discussed below.

Despite the initial financial success of the restaurants, and the popularity of AguPlus' food with locals and food critics, AguPlus failed to turn a profit in any year since 2016. From August of 2016 to December of 2016, AguPlus reported a Net Income loss of $352,068.72. In 2017, losses reported by AguPlus were $2,355,072.69. In 2018, AguPlus lost a staggering $4,335,738.61.

Unbeknownst to Hannan, AguPlus' losses included substantial self-dealing by Uehara and Kidani, and the use of AguPlus' assets and the money loaned by Hannan to fund their own competing business enterprise. In the meantime, Uehara and his wife consulted with attorneys in order to protect all of Uehara's ill-gotten gains from the reach of his creditors, including Hannan, by engaging in transactions to hinder, delay and defraud them.

When Hannan raised concerns about AguPlus' financial losses beginning in 2016 and 2017, Uehara told Hannan that the Hawai'i restaurant industry was unforgiving and assured Hannan that more money was the only thing needed to help with the expansion and to make the restaurants profitable. During this time, Hannan trusted Uehara and believed in the concept of the restaurant,

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 6 of 41

investing and loaning a total of over $8,000,000.00 into AguPlus. However, as discussed herein, Hannan's trust turned out to be wholly misplaced.

In May 2019, a news story in Hawaii broke that employees at the Pearlridge Restaurant were not paid. Employees complained that they also were not paid in February 2019. Uehara again asked Hannan for more loans. Hannan hired counsel in Hawaii to investigate and, if there was sufficient cause to do so, to bring claims against Uehara and others based on their actions as discussed below. Hannan's counsel hired a forensic accountant and started to gather information regarding Uehara and Kidani's actions.

On July 12, 2019, Hannan filed a lawsuit against Uehara, Agu Ramen, LLC and others in the United States District Court for the District of Hawaiʻi. As discussed below, after this case was filed, Hannan engaged in settlement discussions with Uehara and Kidani and attended a court-ordered mediation with Uehara about his resignation as Manager of AguPlus, appointing a replacement manager, and authorizing the filing of Chapter 11 cases for AguPlus and Agu-V.

On or about November 19, 2019, Uehara died. However, just before his death, Uehara resigned as Manager of AguPlus, appointed a replacement manager, authorized the hiring of bankruptcy counsel, and authorized the filing of Chapter 11 cases for AguPlus and Agu-V.

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 7 of 41

On November 29, 2019, AguPlus and Agu-V filed their voluntary petitions for bankruptcy relief. This revealed hundreds of thousands of dollars wasted due to lavish corporate spending by Uehara and Kidani. Specifically, Uehara took a $30,000.00 Management Fee each month regardless of AguPlus' profitability. From 2016 to 2019, Uehara paid himself $1,020,471.20 in Management Fees, $102,595.88 in rent for his apartment in Texas, $327,893.90 for other personal expenses. Uehara also expensed personal food and other costs in the amount of $189,140.87 to AguPlus under the guise of "Market Research." Many of the meals charged as "Market Research" involved dining at restaurants that did not even compete with AguPlus (i.e., KFC, California Pizza Kitchen, Golden Dim Sum etc.) and there also were charges that did not appear to have any connection to the restaurant business (i.e., a $1,033.79 expense at Tiffany & Co.).

In addition to these corporate excesses, Kidani also billed and collected from AguPlus substantial legal fees in the amount of $340,636.18 from June of 2017 to June of 2019 and enjoyed over a hundred comped meals at AguPlus' various restaurants. Additionally, Kidani and Uehara directed loan funds from Agu-V to be used to pay hundreds of thousands of dollars of legal fees to The Kidani Law Center. During this two-year time period, AguPlus was not involved in any legitimate litigation or corporate acquisitions in Hawaii that would explain Kidani's excessive and unsubstantiated legal fees and costs.

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 8 of 41

**B.   Instead of formulating a Workable Business Plan, Uehara, with the help of Kidani, formed separate legal entities to shield new restaurants from AguPlus and its creditors.**

In 2018, during the year of AguPlus' worst financial losses in any year of its operation, Uehara and Kidani saw the writing on the wall and set into motion their plan to operate "AGU a ramen bistro" restaurants outside of the AguPlus corporate framework, thereby leaving Hannan and creditors of AguPlus with their debt while attempting to start their competing business in newly-formed entities under their control.

The first phase of their plan consisted of using separate legal entities – Agu Express, Inc.[5] and Agu Ramen Cupertino, LLC[6] – to operate new "AGU a ramen bistro" restaurants in Seoul, South Korea and Cupertino, California using AguPlus' logo, namesake, equipment, and recipes without Hannan's knowledge. These actions were taken in secret, as AguPlus' corporate documents (1) contained

---

[5] Agu Express, Inc. is a for-profit corporation organized and incorporated in the State of Texas.  Uehara was the President of Agu Express and Kidani is its Secretary, Treasurer and Director.

[6] Agu Cupertino LLC is liability company organized and authorized to do business under the laws of the State of California.  The initial Articles of Organization for Agu Cupertino was filed on October 1, 2018, listing Alexander Kidani as the agent for service of process.  The mailing address for AGU Cupertino is the same address as Kidani's law firm, "The Kidani Law Center".

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed  11/23/20   Page 9 of 41

a non-compete clause[7] that prevented such conduct, and (2) prevented Uehara from unilaterally selling the intellectual property, which was expressly held in the name of AguPlus[8]. After Hannan initiated litigation against Uehara and these entities in the U.S. District Court, Uehara took the position that his actions as Manager of AguPlus could not be challenged.

AguPlus' corporate records have revealed at least two "board meetings" took place wherein Uehara and Kidani attempted to legitimize their efforts. Specifically, on February 14, 2018, two meetings took place under the guise of an Executive Officers meeting, despite the fact that such meetings took place without majority owner Hannan's participation. *See Memorandum of Understanding* dated February 14, 2018. Kidani and Uehara were the sole attendees.

The first set of meeting minutes confirmed that, "Hannan has declined to infuse more capital for expansion of the business" so Angel Capital[9] "shall acquire

---

[7] Article 4.7 of AguPlus' Operating Agreement states that, "[n]either the Members, Manager, nor any affiliate of a Member may engage or invest in any business which competes directly or indirectly with the Company's business."

[8] Article 3.2 of the Operating Agreement also provides that the "Company [AGUPlus] shall hold all Company Property in the name of the Company and not in the name of any Member or Manager. The Members shall not have any ownership interest in such Property."

[9] Angel Capital, Inc. is a corporation organized in the State of Hawai'i. Kidani is the President, Secretary, and Director of Angel Capital. All other officers of Angel Capital share Kidani's last name (Alexander Kidani, Astra Kidani, and Penny Kidani). The Kidani Law Firm is the registered agent for Angel Capital.

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 10 of 41

the rights in South Korea and Shanghai with the AGU brand and recipes for $10,000 per County [sic] due within 90 days after opening in that County" and that Angel Capital "shall be given the rights to use the marks and menu of AGU Ramen."

The second set of meeting minutes stated that Angel Capital "shall acquire the rights in California, Oregon, Nevada and Washington State, Illinois with the AGU brand and recipes [sic] for $10,000 per State due within 90 days after opening in that State", and Angel Capital "shall be given the rights to use the marks and menus of AGU Ramen."

Both of the foregoing "board meetings" took place without Hannan's knowledge. The minutes for both of these meetings were signed only by Uehara as Manager/Member of AGUPlus and Kidani as President of Angel Capital and were not provided to Hannan. These meeting minutes were attached to the August 16, 2018, *Memorandum of Understanding* that was supposedly entered into between AguPlus, AGU Express and Angel Capital to "expedite the restructuring of operations noting that AGU Express would pay AGUPlus $46,845.00 to open new restaurants using AguPlus trademarks and AguPlus "does grant, assign and give all rights to ANGEL CAPITAL INC./AGU EXPRESS INC. to continue the expansion of AGU RAMEN in all new locations it can develop in USA and Internationally."

With the fraudulent assignments in place, Kidani and Uehara opened a "AGU a ramen bistro" restaurant in Seoul, South Korea, using AguPlus' funds and

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 11 of 41

intellectual property. The South Korea restaurant was established on September 18, 2018, has been open since November 2018, bearing the recognizable "AGU a ramen bistro" logo, design and colors. The restaurant offered the same menu offered by AguPlus' restaurants in Texas and Hawaii to its customers. Despite its obvious similarities, these restaurants were established to shield them from AguPlus' creditors, including Hannan.

Uehara and Kidani's ambitious plan did not stop at South Korea. On October 1, 2018, AGU Cupertino was registered with the California Secretary of State and set to open an "AGU a ramen bistro" restaurant in Cupertino, California. AguPlus' records revealed that Uehara caused AguPlus' equipment to be shipped from AguPlus' Texas storage facility to the Cupertino location including, but not limited to, a deep fryer, cash registers, a digital dining POS computer, printers, bowls, a noodle cooker and numerous pots and pans.

On May 29, 2019, without Hannan's knowledge or approval, Uehara and Kidani filed an assignment of the registered trademarks "Agu a ramen bistro" "Agu Ramen" and "Agu" with the United States Patent and Trademark Office, purporting to assign the trademarks from AguPlus to Agu Express. *See* Trademark Assignment Agreement dated May 29, 2019. The Trademark Assignment Agreement, lists all trademarks that were being assigned to Agu Express including,

U.S. Bankruptcy Court - Hawaii #19-01529 Dkt # 411 Filed 11/23/20 Page 12 of 41

"AGU", the "AGU" logo, "AGU RAMEN", "AGU Ramen", "AGU a ramen bistro", "AGU a ramen bistro" logo, "WE LIVE RAMEN", and "FOLLOW THE PIGGIE".

The Trademark Assignment Agreement was signed by Uehara, on behalf of AguPlus, and Kidani, on behalf of Agu Express without Hannan's knowledge or consent.

### C. Uehara and Kidani used the Kahala Property to Obtain Funding for their Expansion Plans.

As stated above, pursuant to the *Iyo Stock Purchase Agreement*, AguPlus became the owner of all of the shares of Agu-V, Inc., formally known as Iyo Seimen, USA, Inc., which owned the real property located at 4490 Pahoa Avenue, Honolulu, Hawaii ("Kahala Property"). Hannan considered the Kahala Property to be a valuable business asset because, among other things, it was free and clear of any liens. Since Iyo Seimen USA, Inc. was a subsidiary of AguPlus, Hannan reasonably expected all decisions regarding the use of the Kahala Property would require approval by both of AguPlus' Members.

Kidani and Uehara recognized the value of the Kahala Property for their own private expansion plans. On or about February 23, 2018, Kidani approached Finance Factors' Vice President/Business Development Manager for Residential Loans for a personal loan to be secured by the Kahala Property.

On or about May 25, 2018, Uehara borrowed $1,000,000, in the form of a line of credit, from Finance Factors.[10] Although it is alleged that Uehara purported to request the loan for the benefit of Iyo Seimen USA, Inc., the reality was that the loan was taken out to fund the competing entities and operations owned and operated by Uehara and Kidani. Additionally, Kidani took significant amounts from the Finance Factors' loan proceeds to pay himself for alleged legal services for Uehara and various entities. In order to get the loan, Uehara and Kidani pledged the Kahala Property to Finance Factors, which filed the Mortgage against the Kahala Property which was recorded in the Bureau of Conveyances on June 1, 2017 as Document No. A67260009. Between June 2018 and July 2019, Uehara and Kidani borrowed approximately $983,990.55 from Finance Factors and made transfers to themselves and their competing companies[11], including:

---

[10] The line of credit was evidenced by a *Real Estate Accessline Agreement* with Finance Factors. The entire $1 million was disbursed at Uehara's direction between June 2018 to June 2019. According to Finance Factors, Uehara did not make any payments on the line of credit prior to Uehara's death in November 2019. In the *Mortgage, Security Agreement, Financing Statement and Fixture Filing* ("Mortgage") filed against the Kahala Property, Uehara listed himself as Vice President and Director of Agu-V.

[11] The disbursements of the $1,000,000 line of credit were as follows:

| | |
|---|---|
| Airport Consulting Group | $10,000 |
| Salt Lake City | 10,000 |
| AguPlus | 77,000 |
| Agu Express | 47,000 |
| Agu Express | 30,000 |
| Airport Consulting Group | 10,000 |
| Agu Express | 30,000 |

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 14 of 41

a. Six transfers payable to Agu Express, Inc. for a total of $306,000.00;

b. Three transfers that totaled $30,000.00 in application fees for Agu Express, Inc.'s restaurant in the Salt Lake City, Utah airport;

c. Five transfers to consumer credit card companies for a total of $30,100.00, including three transfers for accounts maintained by Kidani;

d. Five transfers to Kidani Law Firm for a total of $64,741.50;

e. Six transfers to Central Pacific Bank, a bank that AguPlus and Agu-V, Inc. did not use to conduct their business, for a total of $168,500.00;

f. Two cash withdrawals for a total of $125,000.00;

g. Sixteen transfers to Finance Factors for a total of $99,887.28;

h. A transfer of $5,000.00 to Kala Holdings Corporation, a company controlled by Kidani.

| | |
|---|---:|
| Agu Express | 65,000 |
| Kidani Law Firm | 17,754 |
| Agu Express | 130,000 |
| AguPlus | 196,500 |
| CPB | 40,000 |
| Agu Express | 30,000 |
| CPB | 47,000 |
| Agu Express | 47,000 |
| CPB | 35,000 |
| CPB | 27,000 |
| CPB | 10,000 |
| CPB | 9,500 |
| AguPlus | 77,600 |
| Agu Express | 4,000 |
| **Total** | **$950,354.00** |

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 15 of 41

i.  A draw of $50,284 labeled "Kaya Settlement," which matched the settlement payment owed to Iyo Seimen, less Kidani's legal fees.

**D.  Without a Legitimate Business Plan, AguPlus' Business Failed.**

In his haste to freeze out Hannan from his competing restaurants, Uehara failed to exercise even the most basic care in operating AguPlus' business. As of May 2019, AguPlus' financial condition was so dire that it failed to meet its standard business obligations such as paying its employees, paying monthly rent and paying its food vendors. As mentioned above, more than 12 employee wage claims were filed against AguPlus by its employees.

Compounding matters, Uehara's gross mismanagement of AguPlus resulted in essential food vendors only dealing with AguPlus on a cash-on-demand basis instead of the customary credit basis that it was previously afforded. AguPlus also defaulted on every lease for all of the Hawaii locations and some of the Texas locations.

Uehara and his company, Agu Ramen LLC, had no plans to replace the lost revenue due to all of the restaurant closures, nor did they have a business plan for AguPlus. Of course, Uehara and Kidani actually stood to benefit by AguPlus' demise since it was a competitor to the Agu Ramen shops they were in the process of setting up under their separate ownership.

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 16 of 41

**E.     Hannan Discovers Uehara and Kidani's Attempt to Steal the Isenberg Restaurant from AguPlus and Obtains An Injunction.**

By the first quarter of 2019, the Isenberg Restaurant was the only profitable location of AguPlus' business.  Uehara and Kidani decided to remove it from the ownership of AguPlus and to move it into an entity outside of Hannan's control.

On June 22, 2019, Kidani formed an entity called Agu Isenberg, LLC ("Agu Isenberg") through a filing with the DCCA and assisted Uehara by opening a separate bank account for that entity with First Hawaiian Bank ("FHB") for Agu Isenberg, where sales from the Isenberg Restaurant were deposited.

On June 26, 2019, Uehara notified certain employees of AguPlus by email that, "Agu Isenberg is proceeding onward with new commitment by new investors that support all of you; thank you for your continued patience and commitment as we move forward."

On June 27, 2019, Uehara, without the knowledge or consent of Hannan, instructed AguPlus' HR management company to: (1) change the payroll from AguPlus to Agu Isenberg, (2) change the bank account from AguPlus to Agu Isenberg's new account, and (3) change payroll processing service from AGUPlus to Agu Isenberg as one store with less than 15 employees.

Employees of AguPlus reported these odd messages to Hannan, concerned that Uehara was up to something illegal. He *was*. As soon Hannan

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 17 of 41

discovered this scheme to steal the Isenberg Restaurant, Hannan filed its *Complaint* with the United States District Court of Hawai'i entitled *Hannan Ribiyou Kabushikigaisha v. Agu Ramen LLC, et. al.*, Civil No. 19-00379 (D. Hawaii) to obtain, among other things, an injunction against Uehara.

On July 15, 2019, Hannan obtained a temporary restraining order ("TRO") from the U.S. District Court, thereby preventing Uehara from completing the Isenberg Restaurant conversion.

Notably, the Court found in the TRO that, based upon the evidence presented, Uehara took control of the Isenberg to further his own financial interest:

> For purposes of this Motion, Plaintiff has established that:
> 1) Uehara caused a new entity, AGU Isenberg, to be formed without the required consent of Plaintiff under the Operating Agreement; 2) Uehara caused a new bank account to be opened for AGU Isenberg; and 3) Uehara intends to operate AGU Isenberg as a restaurant separate from AGUPlus. That is, the fair inference from the evidence presented is that, without Plaintiff's knowledge or permission, Uehara has taken control of the AGUPlus Isenberg restaurant for his own financial interest. These actions were taken without the approval of Plaintiff as required by the Operating Agreement, and are inconsistent with the rights of a 10% interest member. These facts thus establish a likelihood of success on Plaintiff's claims of breach of fiduciary agreement, unjust enrichment, and fraud.

During the one-year period prior to November 29, 2019, Mr. and Mrs. Uehara, and/or their affiliated entities, received at least $776,473.00 from AguPlus and at least $90,145.25 from Agu-V.

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 18 of 41

### F. Uehara's Death and the Appointment of a Replacement Manager.

As discussed above, after the U.S. District Court case was filed, Hannan engaged in settlement discussions with Uehara and Kidani and attended a court-ordered mediation with Uehara about his resignation as Manager of AguPlus, appointing a replacement manager, and authorizing the filing of Chapter 11 cases for AguPlus and Agu-V.

Although he was very sick, Uehara initially refused to give up control as manager of AguPlus until just a few days before his death.

On Saturday, November 16, 2019, Kidani delivered Uehara's signature on a Corporate Resolution in which he resigned as manager of AguPlus, appointed Rika Takahashi as his replacement manager, authorized the hiring of bankruptcy counsel, and authorized the chapter 11 filings by AguPlus and Agu-V.

On Tuesday, November 19, 2019, Kidani notified Hannan's counsel of Uehara's passing.

### G. AguPlus and Agu-V, Inc. File for Bankruptcy.

Hannan knew that the best way to preserve the value of AguPlus and Agu-V was to put them both into a chapter 11 bankruptcy case. That is because the Bankruptcy Code has various requirements that would force AguPlus and Agu-V to reveal all of their assets and liabilities, and provides various remedies to recapture or avoid unauthorized or illegal transfers that occurred before the bankruptcy.

Hannan also knew that AguPlus was in need of cash in order to keep the restaurants operating. Therefore, Hannan agreed to loan the Debtors up to $250,000 to continue to fund the operations of the restaurants, and pay employees.

The new Manager of AguPlus, Rika Takahashi, had plans to reopen the Isenberg Restaurant because it had been so successful before the filing, and she knew it had the potential to be successful again. Hannan believed that the bankruptcy filing would preserve value for the benefit of all creditors.

On November 29, 2019, AguPlus and Agu-V filed separate petitions for chapter 11 bankruptcy relief and sought joint administration of their estates (Dkt. No. 20).[12] AguPlus and Agu-V filed separate Schedules and Statement of Financial Affairs (Dkt. Nos. 75 and 76).

At the time of the filing of the petitions, AguPlus had restaurant operations at 3 locations in Texas.[13] As discussed above, although the Isenberg

---

[12] Even though jointly administered, all pleadings were filed under Case No. 19-01529. References to various pleadings are referenced as "Dkt. No. ____" in Case No. 19-01529.

[13] The three (3) operating AguPlus restaurants in Texas were located at:

- 5331 E. Mockingbird Lane, Suite 125, Dallas, TX 75206
- 2130 Lone Star Drive, Sugar Land, TX 77479, and
- 7340 Washington Avenue, Houston, TX 77007

The Debtor had the following closed Texas locations:

- Houston Office, 11238 Wilcrest Green Drive, Houston, TX 77042
- 1809 Elridge Parkway S, Houston TX 77077

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 20 of 41

Location was closed before the bankruptcy petitions were filed, post-petition, Rika

Takahashi reopened and maintained the Isenberg Restaurant until March 2020.[14]

### H. Events During the Bankruptcy Case.

On November 29, 2019 (the "Petition Date"), the day AguPlus and

Agu-V filed their petition for relief, Mr. Uehara had passed away less than two

weeks earlier and at the time of his death, the Debtors' operations were in a chaotic

state.

Hannan advanced $250,000 as debtor-in-possession financing to pay

for insurance and provide funds to operate the Debtors' restaurants in Texas and

---

- 9310 Westheimer Road, Houston, TX  77063
- 1360 E. NASA Parkway, Houston, TX  77058
- 514 S Mason Road, Katy, TX  77450
- 23501 Cinco Ranch Boulevard, R100, Katy, TX  77494
- 11248 Wilcrest Green Drive, Houston, TX  77042

[14] At the time of the filing of the petition, the following leases were the subject of state court summary possession complaints:

- *Virginia Lumapas Taran v. Ezogiku Inc., et. al., Civil No. 1RC19-1-00537 (Honolulu District Court, State of Hawaii)*

- *GGP Ala Moana LLC v. Iyo Seimen USA, Inc., et. al., Civil No. 1RC19-1-5527 (Honolulu District Court, State of Hawaii)*

- *Roland Casamina v. AguPlus, et. al., Civil No. 1RC19-1-05938 (Honolulu District Court, State of Hawaii)*

- *Kapolei v. AguPlus LLC, et. al., Civil No. 1RC19-1-04563 (Honolulu District Court, State of Hawaii)*

- *Pearlridge v. AguPlus LLC, et. al., Civil No. 19-1-05055 (Honolulu District Court, State of Hawaii)*

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 21 of 41

Hawaii. *See* Dkt. No. 92. For the post-petition financing, Hannan received, among other things, a junior lien on the Kahala Property and a superpriority administrative claim against the Debtors.

Only 3 Texas locations, Washington, Mockingbird and Sugar Land, were operative as of the Petition Date. All of the Hawaii leases were subject to orders of summary possession and under § 666-13, Haw.Rev.Stat. and In re Mechanical Unlimited, 38 B.R. 818 (Bankr. D. Haw. 1984), the Debtors could only assume the lease of the Isenberg Restaurant since no order of summary possession had been issued for the Isenberg Restaurant as of November 29, 2019, but all other Hawaii leases had been terminated for non-payment under § 666-13.

As for Agu-V, the lease for the Ala Moana Restaurant had been terminated and Agu-V had vacated the premises and made arrangements with Finders Keepers dba Oahu Auctions[15] and Mr. David Brandt to auction the furniture, fixtures and equipment ("FF&E") at the Ala Moana location (Dkt. No. 120).

Agu-V's only other asset was the Kahala Property. Since the Kahala Property was not being occupied, Agu-V sought authority to employ Locations Inc. to sell the property. Locations Inc. was able to procure a purchaser at a price of $1.71 million, despite the onset of the lockdown and the pandemic. The purchaser

---

[15] By Order of January 27, 2020 (Dkt. No. 97) and April 15, 2020 (Dkt. No. 190), Finders Keepers, dba Oahu Auctions was employed to sell the FF&E at the various locations.

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 22 of 41

paid the $1,710,000, and after commissions and costs, including delinquent real property taxes, the net sales proceeds were $1,558,867.78, were realized and the entire amount was deposited in First American Title, pending further order of the Bankruptcy Court.

The sales proceeds from the Kahala Property are subject to orders to be entered in these proceedings:

(1) *AguPlus, LLC et al v. Finance Factors, Limited*, Adversary Proceeding No. 20-90013;

(2) *Motion to Determine the Applicable Interest Rate of Secured Claim of Finance Factors, Limited and Determining the Amount of Sales Proceeds to be Reserved* (Dkt. No. 367) ; and

(3) *Motion for a Surcharge of Sales Proceeds from 4490 Pahoa Avenue, Honolulu, Hawaii* (Dkt. No. 365).

As for operations, the Isenberg Restaurant, the original location, was reopened in January 2020 and continued to operate for several months until the State of Hawai'i and City and County of Honolulu issued lockdown orders and the restrictions on the "dine-in only" service were so severe that Agu could not survive on "take-out" business only. Oahu Auctions conducted an auction of the Isenberg Restaurant's FF&E. With the closing of the Isenberg Restaurant, all of AguPlus' Hawaii locations were closed and all Hawaii leases were "rejected."

As of November 29, 2019, the 3 Texas locations continued to operate, until the State of Texas instituted a lockdown order and placed restrictions on dining-

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 23 of 41

in services. As a result, the Sugar Land Restaurant and Mockingbird Restaurant were closed and the Washington Restaurant is currently winding down.

The FF&E for the Sugar Land Restaurant and Mockingbird Restaurant has been sold and/or consigned to a Texas restaurant equipment broker. All restaurant operations have closed.

The Plan proposes to pay the allowed claims of creditors of the Debtors from the proceeds of a Liquidating Trust to be established under the Plan. If confirmed, the Plan will bind all persons it provides for, whether or not they accept this Plan, object to confirmation, file a proof of claim or interest, or have their claims or interests allowed in this case.

Upon confirmation of the Plan by the Bankruptcy Court, the cash, tangible and intangible assets of both of the Debtors, including claims and causes of action owned by the Debtors, will be transferred into a Liquidation Trust and creditors of the Debtors will be paid, over time, based on the allowed amount of their claims, from the assets of the Liquidation Trust.

The Plan will treat the Estates of the Debtors as being substantively consolidated as of the Effective Date. Allowed claims of the Debtors' secured creditors will be paid first, priority claims will be paid on the Effective Date in cash in full, and unsecured creditors will be paid on a pro rata basis based upon a single

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 24 of 41

list of unsecured creditors for both Estates. The equity interests in the Debtors will be extinguished on the Effective Date of the Plan.

The Plan will be administered by a Liquidation Trustee and all actions taken under the Plan in the name of the Debtors shall be taken through the Liquidation Trustee in accordance with the provisions of the Plan and the Liquidation Trust Agreement.

The Liquidation Trustee may pursue litigation and the following possible insider preference of transfers to Mr. and Mrs. Uehara:

From AguPlus:    $ 776,473.00

From Agu-V:      $87,267.94

In addition, the Liquidation Trustee may pursue litigation against recipients of the following disbursements made during the period between June 2018 and June 2019, from the Finance Factors line of credit.

| | |
|---|---|
| Airport Consulting Group | $10,000 |
| Salt Lake City | 10,000 |
| AguPlus | 77,000 |
| Agu Express | 47,000 |
| Agu Express | 30,000 |
| Airport Consulting Group | 10,000 |
| Agu Express | 30,000 |
| Agu Express | 65,000 |
| Kidani Law Firm | 17,754 |
| Agu Express | 130,000 |
| AguPlus | 196,500 |
| CPB | 40,000 |
| Agu Express | 30,000 |
| CPB | 47,000 |
| Agu Express | 47,000 |
| CPB | 35,000 |

606515v1\19-110\JKG

|        |            |
|--------|-----------:|
| CPB    | 27,000     |
| CPB    | 10,000     |
| CPB    | 9,500      |
| AguPlus | 77,600    |
| Agu Express | 4,000  |

**Total  $950,354.00**

In addition, during the 90-day period prior to these bankruptcy cases (the "<u>Preference Period</u>"), the following transfers were made to non-insider trade creditors. The Liquidation Trustee may pursue litigation against the recipients of these transfers made during the Preference Period:

From AguPlus SOFA

| Vendor | Total (September – November 2019) |
|--------|----------------------------------:|
| 1. Hambling Properties | $ 39,861.45 |
| 2. Wismettac USA | 24,941.98 |
| 3. Sysco | 21,206.73 |
| 4. Hawaiian Electric | 20,834.40 |
| 5. Heartland Payment System | 20,540.61 |
| 6. The Gas Company | 19,164.38 |
| 7. JFC International | 16,870.56 |
| 8. Reliant Energy | 14,999.06 |
| 9. Eiger LLC | 13,922.53 |
| 10. CPUS Mockingbird, LP | 13,783.95 |
| 11. Restaurant Depot | 12,9238.01 |
| 12. HMAA | 9,348.16 |
| 13. Wage Standards Division | 9,114.07 |
| 14. Aircon Refrigeration | 7,500.00 |
| 15. Ecolab | 7,180.38 |
| **Total** | **$368,506.27** |

From Agu-V SOFA

| Date | Payee | Amount |
|------|-------|-------:|
| 12/4/2018 | Agu Express, Inc. | $1,500.00 |
| 12/5/2018 | Agu Express, Inc. | 1,000.00 |
| 12/14/2018 | Agu Express, Inc. | 10,000.00 |

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 26 of 41

| | | |
|---|---|---:|
| 12/24/2018 | Chase | 4,000.00 |
| 12/27/2018 | American Express | 15,000.00 |
| 1/10/2019 | American Express | 9,021.91 |
| 1/24/2019 | American Express | 6,500.00 |
| 1/29/2019 | Chase | 2,650.00 |
| 2/4/2019 | American Express | 1,950.00 |
| 2/7/2019 | Agu Express, Inc. | 6,000.00 |
| 2/14/2019 | Chase | 2,750.00 |
| 2/15/2019 | Discover | 2,000.00 |
| 2/28/2019 | American Express | 3,400.00 |
| 3/13/2019 | American Express | 3,251.03 |
| 3/25/2019 | American Express | 2,500.00 |
| 5/13/2019 | American Express | 3,000.00 |
| 6/3/2019 | Chase | 850.00 |
| 6/14/2019 | Agu Express | 11,000.00 |
| 6/20/2019 | American Express | 800.00 |
| 6/28/2019 | American Express | 95.00 |
| | **Total** | **$87,267.94** |

Additionally, the Liquidation Trustee may pursue litigation against the recipients of Agu-V's funds that were deposited into a Central Pacific Bank account, in order to make the following disbursements prior to the filing of the bankruptcy cases, as follows:

| | |
|---|---:|
| Agu Korea Inc. | $ 173,000.00 |
| Agu Plus LLC | 46,845.00 |
| Airport Consult Group | 5,000.00 |
| Akamai Development | 10,150.00 |
| AMEX - Grant Kidani | 31,518.17 |
| BarclayCard - Grant Kidani | 1,300.00 |
| CardMember Serv Web Pymt Payable, Accounts | 250.00 |
| Cash | 2,500.00 |
| Central Pacific Bank | 36,446.00 |
| Chase Credit CRD Epay Amy H Kidani | 26,700.00 |
| City and County of Honolulu | 390.38 |
| Craig Inouye | 2,082.00 |
| Finance Factors | 9,138.30 |
| Grant Kidani | 1,000.00 |
| Iyo Seimen USA Inc. | 15,800.00 |

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 27 of 41

| | |
|---|---:|
| Kala Holding Corp | 11,200.00 |
| Kidani Law Firm | 1,000.00 |
| KLF Accounts | 6,293.34 |
| Paid NSF/OD Fee Insufficient Funds | 160.00 |
| PayPal Agu Ramen | 0.14 |
| Penny Kidani | 3,300.00 |
| Ruben Baloticopo | 700.00 |
| Ruben Santos | 500.00 |
| Secretary of State - California | 75.00 |
| Tawa Inc. | 480.00 |
| Wayne Luke | 5,000.00 |
| Welcome Market Inc. | 955.00 |
| Wire Transfer Fee | 445.00 |
| **Total** | **$ 392,228.33** |

The Debtors retained David Brandt of Finders Keepers Etc. dba Oahu Auctions ("Oahu Auctions") to sell the personal property of both AguPlus and Agu-V, which Application was approved by the Court (Dkt. No. 54).[16]

## II. SUMMARY OF PLAN

### A. TREATMENT OF CLAIMS AND INTERESTS

Article I of the Plan divides creditors into the groups listed below. Pre-petition equity interests of the Debtors are eliminated per § 1141 of the Code. The precise treatment proposed for each group is specified in this Disclosure Statement.

---

[16] As per the Order, Oahu Auctions sold the personal property at the Isenberg Restaurant, and filed its Report of Sale on June 10, 2020 (Dkt. No. 276). Other personal property is being sold, including equipment in Texas.

U.S. Bankruptcy Court - Hawaii #19-01529 Dkt # 411 Filed 11/23/20 Page 28 of 41

The claimants in each group or class are specified in the Exhibits. What follows is only a summary. Please review the Plan carefully.

### 1. Unclassified Claims

Some claims against the Debtors are unclassified (because they cannot vote and, unless the claim holder agrees otherwise, their treatment is fixed by the Bankruptcy Code). These unclassified claims include costs of administering this bankruptcy case (Administrative Expense Claims), such as professionals' fees and expenses and other administrative expenses granted by the Court. The last day to file a request for payment of Administrative Claims is 30 days after entry of the Order confirming the Plan (the "Confirmation Order") or such other date of as the Court may order.

### 1. Class 1: Claims Secured by Proceeds from the Sale of 4490 Pahoa Avenue Residence – Finance Factors

Class 1 consists of pre-petition claims secured by collateral or lien on the proceeds from the sale of estate property or liens created by a Court order. Finance Factors, Limited is the only claimant in Class 1 and asserts a lien against the proceeds of the sale of the Kahala Property.

Notwithstanding its filing of proofs of claim against the Debtors, Adversary Proceeding No. 20-90013 (the "Avoidance Action") has been filed by the Debtors and Hannan objecting to Finance Factors' claim and seeking to avoid its

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 29 of 41

lien. There is currently approximately $1,558,867 being held to satisfy the Class 1 claim, subject to distribution as allowed by the Court.

To the extent that Finance Factors' lien is avoided in the Avoidance Action, its claim will be treated as a Class 4 non-priority general unsecured claim and the proceeds from the sale of the Kahala Property will be treated under § 552 of the Code.

### 2. Class 2: Hannan Ribiyou Kabushikigaisha – Junior Lien for Debtor-in-Possession Financing

Hannan Ribiyou Kabushikigaisha ("Hannan") holds a secured Class 2 claim, created by Bankruptcy Court order, as a junior lien on the sales proceeds from the sale of the Kahala Property, and a Super-Priority Administrative Expense Claim for post-petition advances made to the Debtors. Hannan's Class 2 Claim will be paid after any Allowed portion of the Class 1 Claim of FF is paid.

### 3. Class 3: Unsecured Priority Claims – 11 U.S.C. § 507

An unsecured claim has "priority" if it is entitled to certain special treatment under § 507. For example, if either of the Debtors owe you wages that you earned within 180 days before the bankruptcy petition was filed on November 29, 2019, then you may hold an unsecured priority claim for those unpaid wages.

Unpaid pre-petition claims of governmental entities, such State or federal taxes, including taxes owed to the State of Hawaiʻi and Texas or the federal

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 30 of 41

government, if such taxes are not post-petition **Administrative** Expense Claims, are unsecured priority claims.

Allowed Unsecured Priority Claims under section 507(a)(8) for taxes (and secured claims under 11 U.S.C. § 1129 (a)(9)(D)) will be paid over a period of 5 years from the Petition Date.

### 4. Class 4: Non-Priority General Unsecured Claims.

If you hold a claim that is not secured and is not entitled to a priority, then you hold a Class 4 general unsecured claim. This class is divided into two subclasses. Class 4 contains all general unsecured claims other than any small claims in Class 4A (claims below the amount of $2,000 that, for convenience, are to be paid in full on the Effective Date (as permitted by § 1122(b)). A creditor may elect to be a Class 4A "convenience class" and be paid in full on the Effective Date by waiving any claim in excess of $2,000.00. Claims in Class 4 will be paid pro rata from the proceeds in the Liquidating Trust, as administered by the Trustee of the Liquidating Trust.

The Debtors have filed an Omnibus Objection to all Class 4 Claims that were scheduled on the Debtors' Schedules of Assets and Liabilities ("Schedules") and did not file a separate proof of claim, which satisfied the requirements of Official Form 410, or if the Class 4 creditor did file a separate proof of claim, the Debtors filed a separate objection to that proof of claim. The creditors listed in the Omnibus

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 31 of 41

Proof of Claim may file a response to the Omnibus Objection and file a proof of claim substantially complying with the information required by Official Form 410 and complying with Rule 3001(f).

### 2. Class 5 - Interests

The membership interests in AguPlus and the stock ownership interests in Agu-V will be terminated under § 1141 of the Code upon confirmation of the Plan.

### B. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Article II of the Plan governs the assumption and/or rejection of "executory" contracts (a contract is generally defined as executory when both a Debtor and the other party to the contract have not yet fully performed their obligations, and the unperformed obligations of both parties are significant enough that either party's breach would excuse the other party from performing). All of the restaurant leases have been rejected by Court order and other leases have been rejected by operation of law. Exhibits to this Disclosure Statement specify whether, on the Effective Date, there are any executory contracts or unexpired leases, not previously rejected, which will be "rejected" (meaning that Debtors will no longer perform under the agreement, and the other party can file a claim for damages resulting from that rejection (§ 502(g)) within 30 days after the Effective Date of the Plan.

None of the pre-petition leases or executory contracts will be assumed. To the best of the Plan Proponents' knowledge, all executory contracts have expired or have been terminated.

### C.  MEANS OF IMPLEMENTATION

Article III of the Plan explains how the Debtors will implement the Plan.

The Plan provides that the cash, tangible and intangible assets of both of the Debtors, including claims, causes of action, rights of setoff and other legal and equitable defenses of the Debtors and their Estates (collectively, "Causes of Action") will be transferred into a Liquidation Trust for the benefit of holders of all Allowed Claims, as set forth in the Plan.

Creditors of the Debtors will be paid, over time, based on the allowed amount of their claims, from the assets of the Liquidation Trust. The Plan will treat the Estates of the Debtors as being substantively consolidated. Allowed claims of the Debtors' secured creditors will be paid first, priority claims will be paid on the Effective Date in cash in full, and unsecured creditors will be paid on a pro rata basis based upon a single list of unsecured creditors for both Estates. The equity interests in the Debtors will be extinguished on the Effective Date of the Plan.

The proceeds will be distributed by the Liquidating Trustee as per the Plan.

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 33 of 41

## D. EXIT FINANCING FROM HANNAN

On the Effective Date, the Debtors will enter into a credit facility with Hannan in the amount of up to $500,000, or such other amount approved by the Court (the "Exit Facility") on substantially the same terms as the prior financing (including a super-priority administrative expense claim and the liens described below), to provide the funding necessary to satisfy the Plan's cash payment obligations on the Effective Date.

Hannan's existing Class 2 Claim of $250,000.00, plus applicable interest, attorney's fees and costs, will be increased by an amount equal to the amount of the Debtors' draw on the Exit Facility to make required cash payments on the Effective Date.

Hannan's Exit Facility will be secured by a junior lien on existing assets subject to a senior lien, and by a first-priority lien on all assets not subject to an existing lien, as established by the Court.

As a condition to providing the Exit Facility, Hannan will receive a full and general release of all claims arising before the Effective Date.

## E. DISCHARGE; EFFECTS OF CONFIRMATION

Article IV of the Plan provides that the Debtors will not be discharged as provided in § 1141(d).

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 34 of 41

Article IV of the Plan also specifies certain effects of confirmation, including that creditors are prevented from attempting to collect pre-confirmation obligations not in accordance with the terms of the Plan.

### F. GENERAL PROVISIONS

Article V of the Plan includes General Provisions, such as how the Plan can be modified, and a provision that if the Plan complies with certain technical rules then it can be confirmed even if one or more classes of creditors or interest holders vote to reject the Plan (§ 1129(b)).

## III. VOTING ON PLAN, AND OBJECTIONS

### A. WHO MAY VOTE

You are entitled to vote on the Plan unless: (1) your claim or interest is Disputed (as defined in the Plan); (2) your class is to receive no distribution (presumed to reject the Plan), such as the interest holders of the Debtors; (3) your class is "unimpaired" (presumed to accept the Plan – see Exhibits to this Disclosure Statement for the proponent's designation of which classes are "impaired") (§ 1124); or (4) your claim is unclassified (and thus is required by law to be paid in full) (§§ 1123(a)(1) & 1129(a)(9)(A) & (C)).

If your claim or interest is Disputed then you must file a motion to have your claim allowed for voting purposes (you must do that soon, so that your motion can be heard before votes are counted) (Rule 3018(a)).

U.S. Bankruptcy Court - Hawaii #19-01529 Dkt # 411 Filed 11/23/20 Page 35 of 41

**B.    WHO MAY VOTE IN MORE THAN ONE CLASS**

If your claim has been allowed, in part, as a secured claim and, in part, as an unsecured claim, or if you otherwise hold claims or interests in more than one class, you are entitled to accept or reject the Plan in each capacity and you should return one ballot for each claim or interest.

**C.    HOW TO VOTE**

Fill out and return the attached ballot (if you are entitled to vote) so that it is received by the deadline established by the Bankruptcy Court and according to the instructions in the enclosed order and notice regarding voting and procedures.

**D.    EFFECT OF VOTE**

The Plan will be confirmed only if (1) it is accepted by each impaired class, or (2) it is accepted by at least one impaired class (without counting the votes of "insiders," as defined in § 101(31)) and the court determines that the Plan is "fair and equitable" (as defined by § 1129(b)) to all rejecting classes of creditors, and (3) it meets all of the other legal requirements for confirmation.  A class of creditors accepts the Plan if a majority in number and at least two-thirds in dollar amount of the claims in that class are timely voted in favor of the Plan (§ 1126(c)).  Equity interests of the Debtors are presumed to reject the Plan and will not receive anything under the Plan.

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 36 of 41

E.    **SOLICITATION OF VOTES**

Nobody is permitted to solicit your vote to accept or reject any plan during the bankruptcy case unless, at or before the time of the solicitation, you have been provided with the plan or a summary of the plan and a written disclosure statement that has been approved by the court as containing adequate information for you to make an informed judgment about the plan. Then any person may solicit your vote for or against the Plan.

F.    **WHO MAY OBJECT**

Even if you are not entitled to vote, you can object to confirmation of the Plan if you believe that the requirements for confirmation are not met (and if you are a party in interest in this bankruptcy case). For the deadlines and procedures, see the enclosed order or court-approved notice.

## IV.    OTHER INFORMATION

A.    **BACKGROUND/RISK FACTORS**

Included with this Disclosure Statement are a brief description of: (1) Debtor's history, the events leading to the chapter 11 bankruptcy, and other relevant history of Debtor's business and financial affairs; (2) significant events during the bankruptcy case; and (3) a description of the Liquidation Trust and how it works.

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 37 of 41

## B.    LITIGATION

The Liquidation Trustee might sue you if, for example, you received a transfer of any funds from the Debtors or received any other property from the Debtors that is avoidable under the Bankruptcy Code.  Other types of claims also may be made, and the Plan Proponents have not completed an investigation, but there may be anticipated and pending legal proceedings by the Liquidation Trustee.

The major litigation is Case No. 19-00369 (D. Hawaii), being prosecuted by Hannan and other related litigation described in the JPA.  As to avoidance claims not covered by the JPA, there are four (4) pending cases, which may result in the Liquidation Trust receiving proceeds to be distributed.

(1)    *Hannan Ribiyou Kabushikigaisha v. Personal Representative of the Estate of Hisashi Teddy Uehara, et al., Civil No. 20-0000198 DEO* in the Circuit Court of the First Circuit, State of Hawaii (the "HUFTA Action");

(2)    *Hannan Ribiyou Kabushikigaisha v. Personal Representative of the Estate of Hisashi Teddy Uehara, et al., No. 20-DCV-272740* in the District Court for the 434th Judicial District of Fort Bend County, Texas (the "TUFTA Action"); and

(3)    *AguPlus, LLC, et al. v. Finance Factors Limited, Adversary No. 20-90013* in the United States Bankruptcy Court for the District of Hawaii (the "FF Adversary").

(4)    *In re Estate of Hisashi Uehara aka Hisashi Teddy Uehara, Case No. 20-CPR-034205* (District Court for the 434th Judicial District of Fort Bend County, Texas) (the "Probate Case").

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 38 of 41

This does not include all of the avoidable claims.  A list of potential defendants of claims of the Debtor's Estates can be found on Schedule "1" to the Plan.

C.   FEASIBILITY

The Plan cannot be confirmed unless the court finds it feasible.  The Plan Proponent believe the Plan is feasible because, both on the Effective Date and for the duration of the Plan, the Liquidation Trustee will have sufficient proceeds from the Liquidation Trust to make distributions according to the Plan.

The litigation cases which are the subject of the JPA have been initiated.  The law firms of Goodsill Anderson Quinn & Stifel and Gus G. Tamborello, P.C. have been employed as special counsel per orders of the Court.

Hannan will provide Exit Financing to satisfy the monetary requirements for paying priority claims at confirmation. Expenses of the Liquidating Trust will be paid either from the Exit Financing or from recoveries in litigation.

D.   TAX CONSEQUENCES OF THE PLAN

1.   Tax Consequences to the Debtors

The Debtors do not believe that there are any tax consequences based upon the Plan's implementation, including, but not limited to, tax attribute reduction and the recognition of gain or loss on any transfer of the Debtors' assets.

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 411   Filed 11/23/20   Page 39 of 41

### 2. Tax Consequences to Holders of Claims and Interests

You should consult your own accountant, attorney and/or advisors as to the tax effect to you of any Plan transactions.

### E. LIQUIDATION ANALYSIS

The Plan cannot be confirmed unless the court finds that, for each impaired class of claims or interests that has not accepted the Plan, the class will receive or retain no less than if Debtors' bankruptcy estate were liquidated under chapter 7 of the Bankruptcy Code.

The Debtors assets include $1,558,867 held for the adjudication of the alleged secured claim of Finance Factors, Limited against Agu-V, Inc. which is subject to an objection by the Debtors and Hannan in Adv. Proc. No. 20-90013. Hannan has a junior lien on those proceeds as per the Court order approving Debtor-in-Possession financing, subject to any recovery for the estate under § 552.

The Liquidation Trust will be funded by the Exit Financing and proceeds from the litigation described in the JPA and any avoidance claims prosecuted by the Liquidation Trust.

### F. SPECIAL PROCEDURES

This Disclosure Statement and the accompanying Plan, with exhibits, are the principal documents for Debtors' proposed financial restructuring, but the court may authorize more lengthy documents to be filed separately (a Plan

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 40 of 41

supplement), or may authorize shorter documents to be served on some classes. Streamlined procedures are encouraged, both to save costs and because that may provide creditors and other parties in interest with more meaningful disclosure. For example, the court may consider: (1) whether, instead of receiving the full Plan and Disclosure Statement, some classes should receive a "court-approved summary" such as a brief table showing the proposed treatment of each class, with prominent instructions on how to request a copy of the full documents and/or review them online (see § 1125(b) & (c) and Rule 3017(d)(1)); (2) whether to establish special procedures for transmitting documents and information (see Rule 3017(e)), (3) whether to adjust any deadlines (see Rule 9006(c)), and (4) whether to adopt any other special procedures.

DATED:  Honolulu, Hawaiʻi, November 23, 2020.

*/s/ Jerrold K. Guben*
JERROLD K. GUBEN
Attorney for Plan Proponents
AGUPLUS LLC and AGU-V, INC.

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 411  Filed 11/23/20  Page 41 of 41