O'CONNOR PLAYDON GUBEN & INOUYE LLP
A LIMITED LIABILITY LAW PARTNERSHIP

JERROLD K. GUBEN  3107-0
733 Bishop Street, Suite 2400
Honolulu, Hawaii  96813
Telephone: (808) 524-8350
Facsimile: (808) 531-8628
JKG@opgilaw.com

Attorney for Debtors
and Debtors-in-Possession,
AGUPLUS, LLC and AGU-V, INC.

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>AGUPLUS, LLC,<br><br>      Debtor and<br>      Debtor-in-Possession. | Case No. 19-01529<br>Case No. 19-01530<br>(Jointly Administered)<br>(Chapter 11) |
| In re:<br><br>AGU-V, INC.,<br><br>      Debtor and<br>      Debtor-in-Possession. | Hearing:<br>Date:   March 15, 2021<br>Time:   2:00 p.m.<br>Judge:  Honorable Robert J. Faris |

## DEBTORS' CONFIRMATION BRIEF RE: DEBTORS' JOINT CHAPTER 11 LIQUIDATING PLAN OF JANUARY 25, 2021

## I.    BACKGROUND

On November 29, 2019, Agu Plus, LLC ("AguPlus") and Agu-V, Inc.

("Agu-V") filed their petitions for relief.    The cases were subject to joint

administration. Mrs. Rika Takahashi was designated the "Responsible Person". At the time of the filing, Agu Plus operated, or was in the process of opening, as a Debtor-in-Possession, one restaurant in Hawaii, 925 Isenberg Street, Honolulu, Hawaii, and three restaurants in Texas, the Mockingbird, Sugarland and Washington Avenue locations. The restaurants began their operations before Covid-19, the pandemic, however, over time, quarantines, lockdowns and restrictions after March 2020, adversely impacted the Debtors' business.

Eventually, business declined to the point where the revenues did not cover all the costs, except at the Washington Avenue location, and AguPlus began to close the locations.

During this time of winding down operations, the Debtors sold off the furniture, fixtures and equipment ("FF&E") at the Ala Moana Center location and the Isenberg location and Texas locations, including the company-owned vehicles. The Debtor rejected the several leases in Hawaii and Texas and the landlords filed proofs of claim for rejection damages and, where applicable, administrative claims for unpaid post-petition occupancy.

Agu-V had one operating restaurant at Ala Moana Shopping Center, which was closed prior to the filing of the petition.[1] The only other Agu-V asset

---

[1] The following cases were subject to complaints for summary possession on the petition date:

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 504  Filed  03/10/21  Page 2 of 27

was a single-family residence at 4490 Pahoa Avenue, Honolulu, Hawaii. In or about June 2018, Agu-V, formerly Iyo Siemens, as an accommodation pledgor pledged the residence to Finance Factors ("FF"), for a "line of credit" in the amount of $1,000,000, for the effective and practical use of the late Mr. Hisashi Uehara. The disbursements from the FF line of credit were as follows:

| Airport Consulting Group | $10,000 |
|---|---|
| Salt Lake City | 10,000 |
| AguPlus | 77,000 |
| Agu Express | 47,000 |
| Agu Express | 30,000 |
| Airport Consulting Group | 10,000 |
| Agu Express | 30,000 |
| Agu Express | 65,000 |
| Kidani Law Firm | 17,754 |
| Agu Express | 130,000 |
| AguPlus | 196,500 |
| CPB | 40,000 |
| Agu Express | 30,000 |
| CPB | 47,000 |

*Virginia Lumapas Taran v. Ezogiku Inc., et. al., Civil No. 1RC19-1-00537 (Honolulu District, State of Hawaii)*

*St. Louis Alumni Association v. AguPlus LLC, Civil No. 19-1-7060 (Honolulu District, State of Hawaii)*

*GGP Ala Moana LLC v. Iyo Seimen USA, Inc., et. al., Civil No. 1RC19-1-5527 (Honolulu District, State of Hawaii)*

*Roland Casamina v. AguPlus, et. al., Civil No. 1RC19-1-05938 (Honolulu District, State of Hawaii)*

*Kapolei v. AguPlus LLC, et. al., Civil No. 1RC19-1-04563 (Honolulu District, State of Hawaii)*

*Pearlridge v. AguPlus LLC, et. al., Civil No. 19-1-05055 (Honolulu District, State of Hawaii)*

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 504  Filed 03/10/21  Page 3 of 27

| | |
|---|---|
| Agu Express | 47,000 |
| CPB | 35,000 |
| CPB | 27,000 |
| CPB | 10,000 |
| CPB | 9,500 |
| AguPlus | 77,600 |
| Agu Express | 4,000 |
| | $950,354[2] |

[2] Some of the disbursements from the FF line of credit were to Central Pacific Bank. From the CPB account, Uehara withdrew or paid other claims as follows:

| | |
|---|---|
| Agu Korea Inc. | $173,000.00 |
| Agu Plus LLC | 46,845.00 |
| Airport Consult Group | 5,000.00 |
| Akamai Development | 10,150.00 |
| AMEX - Grant Kidani | 31,518.17 |
| BarclayCard - Grant Kidani | 1,300.00 |
| CardMember Serv Web Pymt Payable, Accounts | 250.00 |
| Cash | 2,500.00 |
| Central Pacific Bank | 36,446.00 |
| Chase Credit CRD Epay Amy H Kidani | 26,700.00 |
| City and County of Honolulu | 390.38 |
| Craig Inouye | 2,082.00 |
| Finance Factors | 9,138.30 |
| Grant Kidani | 1,000.00 |
| Iyo Seimen USA Inc. | 15,800.00 |
| Kala Holding Corp | 11,200.00 |
| Kidani Law Firm | 1,000.00 |
| KLF Accounts | 6,293.34 |
| Paid NSF/OD Fee Insufficient Funds | 160.00 |
| Pay Pal Agu Ramen | 0.14 |
| Penny Kidani | 3,300.00 |
| Ruben Baloticopo | 700.00 |
| Ruben Santos | 500.00 |
| Secretary of State - California | 75.00 |
| Tawa Inc. | 480.00 |
| Wayne Luke (Attorney) | 5,000.00 |
| Welcome Market Inc. | 955.00 |
| Wire Transfer Fee | 445.00 |

The 4490 Pahoa Avenue residence was sold for $1.71 million, and after the payment of the costs of sale and a § 506(c) surcharge, there is $1,545,347.34, on deposit at First Hawaiian Bank. The distribution of the $1,545,347.34 will be resolved in Adv. Pro. 20-90013, set for trial in August 2021.

On November 23, 2020, the Debtors filed their Disclosure Statement, and the Amended Disclosure Statement was approved by the Court (Dkt. No. 469), February 9, 2021. The Court fixed a March 8, 2021 as the final date to return a ballot with a March 15, 2021 confirmation date.

The proposed Plan provides for the "substantive consolidation" of the estates of Agu Plus and Agu-V. Prior to the filing of the petition, the debtor operated under various names. Agu-V formerly operated under the name of Iyo Siemens, AguPlus operated as Bazinkus, and Mr. Uehara, before his death, incorporated an umbrella entity called Agu Hawaii, while the restaurants operated as Agu Ramen. As noted above, the $1 million line of credit, secured and collateralized by the 4490 Pahoa residence, was used by Uehara for payment of several of the Uehara entities, except Agu-V, and his personal expenses, while personal expenses were paid through a CPB account, which was itself paid by disbursements from the FF line of credit. Creditors dealt with the debtors under different names for different purposes.

| Total | $392,228.33 |

The major asset of the estate is litigation identified in the Joint Prosecution Agreement (Dkt. No. 247) (May 18, 2020), and the Amended Joint Prosecution Agreement (Dkt. No. 358) (August 21, 2020) (hereinafter "JPA"). Those Agreements provide for the prosecution of the described litigation with proceeds allocated as per the JPAs:

> 60% (Hannan): 40% (AguPlus) in Texas Uniform Fraudulent Transfer Case in *Hannan Ribiyou Kabushikigaisha v. Personal Representative of the Estate of Hisashi Teddy Uehara, et al., No. 20-DCV272740 in the District Court for the 434th Judicial District of Fort Bend County, Texas* (the "TUFTA Action");

> 60% (Hannan): 40% (AguPlus) Hawaii Uniform Fraudulent Transfer Act in *Hannan Ribiyou Kabushikigaisha v. Personal Representative of the Estate of Hisashi Teddy Uehara, et al., Civil No. 200000198 DEO in the Circuit Court of the First Circuit, State of Hawaii* (the "HUFTA Action");

> *In re Estate of Hisashi Uehara aka Hisashi Teddy Uehara, Case No. 20-CPR-034205 (District Court for the 434th Judicial District of Fort Bend County, Texas)* ("Probate");

> *Hannan Ribiyou Kabushikigaisha v. Agu Ramen, LLC, et. al., Civil No. 19-00379 (D. Hawaii),* and

> *AguPlus, LLC, et al. v. Finance Factors Limited, Adversary No. 20-90013 in the United States Bankruptcy Court for the District of Hawaii.* (The amount of the lien avoided will belong entirely to the Agu-V Estate).

The Debtor has filed a Motion for Order Authorizing Debtors to (1) Obtain Post-Petition, Secured Exit Financing in Connection with Joint Plan of Liquidation; (2) Grant Security Interests and Superpriority Claims Pursuant to Section 364(c) of the Bankruptcy Code ("Motion for Exit Financing"), for

$500,000.00 to pay the "allowed administrative claims" and payment as required by 11 U.S.C. § 1129(a)(9)(A). The $500,000 exit financing provides for the following:

> (1) the "exculpation" of the lender, Hannan, will receive an "exculpation" release modeled after _Blixeth v. Credit Suisse, 961 F.3d 1074 (9th Cir. 2020)_;

> (2) the $500,000 provides for a post-petition "earmarking" for the payment for allowed professional fees; and

> (3) payment of allowed administrative expense claims, including 28 U.S.C. § 1930(a)(6) fees.

The Exit Financing Motion provided for an "earmarking" for the professional fees for OPGI and CW Associates. _In In re Motors Liquidation Company (General Motors case), 596 B.R. 774 (Bankr. S.A. N.Y. 2018)_, the court noted as to a "post-petition" earmarking:

> "… While it appears that the earmarking doctrine has not been used where DIP loan proceeds were the source of funds for payment, the lack of precedent does not, in itself, doom the Term Lenders' argument. _See Peoples Bank & Tr. Co. v. Burns_, 95 F. App'x 801, 805 (6th Cir. 1004) ("Although the earmarking doctrine has not been applied to post-petition transfers in the Sixth Circuit, other courts have so expanded its application…. Whether expanded application of the doctrine is warranted under the facts of this case remains to be determined, but we are unwilling, at this stage, to answer the question unequivocally in the negative."). In _In re Westchester Trans. Fabricators, 207 B.R. 391, 398 (Bankr.E.D.N.Y. 1997), In re Network 90 Degrees, Inc., 98 B.R. 821 (Bankr.N.D.Ill.. 1998)_ (courts recognizing post-petition loan.

> In _People's Bank & Trust Co. v. Burns_, 95 Fed. App. 801 (805) (6th Cir. 2004).

"Although the earmarking doctrine has not been applied to post-petition transfers in the Sixth Circuit, other courts have so expanded its application. *See In re Westchester Tank Fabricators, 207 B.R. 391, 398 (Bankr.E.D.N.Y. 1997); In re Network 90 Degrees, 98 B.R. 821, 837 (Bankr.N.D.Ill. 1989).* Whether expanded application of the doctrine is warranted under the facts of this case remains to be determined, but we are unwilling, at this stage, to answer the question unequivocally in the negative."

See the Debtors' Reply to United States Trustee's Statement Regarding Confirmation of Debtors' Joint Plan of Reorganization Dated January 25, 2021 (Dkt. No. 497) filed on March 8, 2021, for discussion of a post-petition "earmarking" for the professional fees.

On March 8, 2021, the Debtors filed their Report on Administrative Claims. The administrative claims bar date was March 5, 2021. The revised schedule of administrative claims:

| Estimated Administrative Claims | |
|---|---|
| Internal Revenue Service | $114,000 |
| CW Associates (Dkt. Nos. 303 and 304) | $17,000 |
| O'Connor Playdon Guben & Inouye LLP | $250,000 |
| Office of the United States Trustee | $24,345 |
| Liquidating Plan | $25,000 |
| **Subtotal** | **$430,345** |
| | |
| Filed Proof of Administrative Claims | |
| State of Texas (POC No. 36) | $28,816 |
| State of Hawaii (POC No. 37) | 6,483 |
| State of Texas Sales Tax (POC No. 35) | 7,228 |
| City of Houston (POC No. 34) | 867 |
| Alief (Texas) Independent School District (POC No. 33 | 1,900 |

| | |
|---|---:|
| Willow Fork (Texas) Drainage District (POC No. 32) | 185 |
| Fort Bend (Texas) county Levee Improvement District No. 2 (POC No. 31) | 117 |
| CPUS Mockingbird LP (POC No. 24) | 11,000 |
| LCFRE Sugar Land Town Square LLC (POC No. 18) | 2,286 |
| Aldine (Texas) Independent School District (POC No. 42) | 8,012 |
| **Subtotal** | **$67,990** |
| **TOTAL NON-HANNAN ADMINISTRATIVE CLAIMS** | **$498,335** |

Hannan's "administrative claim" based on the January 23, 2020 Order, provides a secured junior lien and superpriority administrative claim for $275,928. As per the Order of January 23, 2020, Hannan obtained a "superpriority" administrative claim, and a junior lien on the sale proceeds of 4490 Pahoa Avenue for the initial Debtor-in-Possession financing. The Hannan claim is both an unsecured administrative claim and a secured junior lien on the sales proceeds of 4490 Pahoa Avenue.

The exit financing of $500,000 covers the regular administrative claims but excludes Hannan's superpriority administrative claim. Under § 1129(a)(9)(A), Hannan can agree to different treatment as for provided by § 1129(a)(9)(A).

645940v1/19-110/JKG
U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 504  Filed  03/10/21  Page 9 of 27

## II.    DISCLOSURE STATEMENT AND SOLICITATION OF VOTES

On February 9, 2021, this Court approved the Amended Disclosure Statement and set a March 8, 2021 for all ballots to be returned.

According to the returned ballots, Ballot Tabulation shows the following among the Classes eligible to vote:

| Creditor | Class | Amount | % of Class Voting to Accept | Accept/ Reject |
|---|---|---|---|---|
| Finance Factors Limited[3] | 1 | $1,298,999.25 | | Reject |
| Hannan Ribiyou Kabushikigaisha | 2 | $275,928.12 | | Accept |
| Hannan Ribiyou Kabushikigaisha | 3 | $275,928.12 | | Accepts |
| Hannan Ribiyou Kabushikigaisha | 4 | $2,630,000.00 | | Accepts |
| LCFRE Sugar Land Town Square, LLC | 4 | $127,582.92 | | Accept |
| CPUS Mockingbird LP | 4 | $149,695.71 | | Accept |
| REI Food Service, LLC | 4 | $135,733.23 | | Reject |
| REI Food Service, LLC | 4 | $34,010.12 | | Reject |
| St. Louis Alumni Association | 4 | $72,265.69 | | Accept |

Under § 1126(c),

(c)   A Class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

---

[3] FF did not obtain a Rule 3018 provisional Order of the Court even though there is an adversary proceeding challenging the FF's claim, Adv. Proc. No. 20-90013.

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 504   Filed   03/10/21   Page 10 of 27

The total voting Class 4 claims are five (5) creditors, and the three (3) Class 4 creditors accepting the Plan satisfies the numerosity requirements of § 1126(c) (excluding claimants covered by § 1129(a)(10)). The amount of the Class 4 claims accepting the Plan is $349,542 or 67.3% of the total amount of voting Class 4 claims.[4] The number of Class 4 claimants accepting the Plan is three (3) Class 4 creditors of five (5) voting creditors, and two (2) Class 4 creditors rejecting the Plan. The Plan is accepted. On March 9, 2021, the Debtors filed their Tabulation Report of Ballots.

## III. CONFIRMATION REQUIREMENTS ARE SATISFIED

### A. THE PLAN COMPLIES WITH APPLICABLE PROVISIONS OF BANKRUPTCY CODE AND REQUIRED BY SECTION 1129(a)(1)[5]

The legislative history behind this subsection explains that it is grounded in the requirements of sections 1122 and 1123 of the Bankruptcy Code, governing classification of claims and the contents of a plan. *See H.R. Rep. No. 595, 95th Cong. 1st Sess. 412 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5912, 6368.* As demonstrated below, the Plan satisfies all requirements for the confirmation of the Plan as set

---

[4] The total voting claims in Class 4 is $519,285. The Class 4 claims voting for the Plan was $349,542 or 67.3% of $519,285.

[5] 11 U.S.C. § 1129(a)(1) provides,

   (1) The plan complies with the applicable provisions of this title.

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 504   Filed   03/10/21   Page 11 of 27

forth in sections 1122 and 1123 of the Bankruptcy Code, except the number of voting to accept the Plan.

**B. THE PLAN CLASSIFICATION SYSTEM SATISFIES 11 U.S.C. SECTIONS 1122 AND 1123(a)(1)-(4)**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or interest in a particular class only if such claim or interest is "substantially similar" to the other claims or interests in the same class. See 11 U.S.C. § 1122. The Plan contains 4 classes of creditors, excluding unclassified administrative expense claims. The claims of (i) the secured creditors, Classes 1 and 2, (ii) priority unsecured creditors, Class 3 including the taxing authorities, not administrative claims, and the general unsecured creditors (Class 4).

The Plan satisfies the requirements of Sections 1123(a)(1), 1123(a)(2) and 1123(a)(3) in that the Plan designates classes, specifies any class that is not impaired, and specifies the treatment of any class that is impaired. See 11 U.S.C. §§ 1123(a)(1)-(a)(3).

Section 1123(a)(4) states that a plan shall "provide the same treatment for each claim or interest within a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." The Plan treats all members of each respective Class similarly, and there is no "intra-class" discrimination among creditors within the same Class.

## C. THE PROPONENT (DEBTOR) HAS COMPLIED WITH APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE: 11 U.S.C. § 1129(a)(2)

Section 1129(a)(2)of the Code requires that a plan proponent comply with the applicable provisions of the Bankruptcy Code.  See e.g., *Kane v. Johns-Manville Corp.*, *843 F.2d 636, 648 (2d Cir. 1988)* (Chapter 11 plan complies with applicable provisions of title and could be confirmed notwithstanding technical violations of Bankruptcy Code).

As evidenced by the Court's prior orders and the record in this case, the Debtor has complied with all of the Court's orders, and the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules, governing notice, disclosure, solicitation, and all other matters arising in or in connection with this case. Adequate, sufficient, and timely notice of the confirmation hearing and all other hearings was given to all creditors and other parties in interest or parties to whom notice was required as requested.

The Debtor has also properly solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and has satisfied section 1129(a)(2) of the Bankruptcy Code.

## D. THE PLAN WAS PROPOSED IN GOOD FAITH: 11 U.S.C. § 1129(a)(3)

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 504   Filed  03/10/21   Page 13 of 27

"proposed in good faith and not by any means forbidden by law." Under Ninth Circuit law, a plan is proposed in good faith when it is intended to achieve a result consistent with the objectives of chapter 11 and in light of the Code's purpose to provide the creditors with a recovery on the pre-petition claims. The Plan provides for the creation of a Liquidating Trust, administered by a Trustee to be named and approved by the Court. The Debtor's Motion for Approval of Exit Financing provides for $25,000.00 in Trust Funding. *See In re Corey, 892 F.2d 829, 835 (9th Cir. 1989)* (plan proposed in good faith in part because represented fair, well-reasoned effort to end years of litigation surrounding debtors' bankruptcies); *In re Boulders on the River, Inc., 164 B.R. 99, 103 (B.A.P. 9th Cir. 1994)* (good faith "requires the plan to achieve a result consistent with the objectives and purposes of the Bankruptcy Code"). Good faith in proposing a plan of reorganization is assessed by the Court and viewed under the totality of the circumstances. *See In re Boulders on the River, Inc., 164 B.R. at 104.*

The Debtor's Plan was proposed in good faith, with the legitimate and honest purpose of paying the Debtor's creditors, based on the proceeds from the litigation described in the Joint Prosecution Agreement ("JPA") (Dkt. No. 247) and the Amended JPA (Dkt. No. 358), and for avoidance claims that the Liquidation Trustee is able to recover. The Plan has not been proposed for any purpose prohibited by law. The Debtors' believe that under the Plan, creditors will receive at least as much under the Plan and the JPAs they would receive under a Chapter 7

liquidation. Under a Chapter 7 liquidation all of the Debtor's assets, the litigation identified herein, become part of the Chapter 7 estate. Under a Chapter 7 liquidation, except for the litigation described in the JPA, the Class 4 unsecured creditors would receive nothing since there are no "assets to be sold." The Class 1 claim of FF is fully secured depending on the outcome of Adv. Proc. No. 20-90013, and has an interest in the sales proceeds from the sale of the residence at 4490 Pahoa Avenue, now on deposit at First Hawaiian Bank ("FHB"). If the FF lien on the FHB proceeds is avoided, the sales proceeds go to the Agu-V estate. If the case is converted to Chapter 7, a Chapter 7 trustee appointed and the assets liquidated, and after payment of the trustee's expenses, the only assets will be the proceeds from the litigation or other avoidance claims.

As to the allowed administrative claims, Hannan has proposed exit financing in the amount of $500,000.00 to cover the administrative claims of up to $500,000.00. The Non-Hannan administrative claims do not exceed $500,000.00.

Moreover, in a converted Chapter 7, the Trustee's fees and the fees of the Chapter 7 professionals must be paid before the unsecured creditors are paid. Under the Plan, the law firm of Goodsill Anderson Quinn & Stifel has agreed to provide legal services at no cost to the Liquidating Trustee. At this time, it is indeterminate as to the recovery for the unsecured creditors from the litigation.

Accordingly, the Plan has been proposed in good faith and the provisions of Section 1129(a)(3) have been satisfied.

U.S. Bankruptcy Court - Hawaii   #19-01529   Dkt # 504   Filed  03/10/21   Page 15 of 27

### E.     THE PLAN COMPLIES WITH 11 U.S.C. SECTION 1129(a)(4)

Section 1129(a)(4) of the Bankruptcy Code requires that "[a]ny payment made or to be made by the proponent, by the debtor, or by a person acquiring property under the plan, for services of or costs and expenses in or in connection with the case, or in connection with the plan and the incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." 11 U.S.C. § 1129(a)(4).  As set forth in the Plan, all payments for fees and expenses in connection with this case will be subject to approval of this Court.  Therefore, the Plan has met the requirement of section 1129(a)(4).  The Debtor's counsel and the court-approved accountant, CW Associates, will file a separate fee applications after the Confirmation of the Plan to include all OPGI and CW Associates' professional services.    O'Connor Playdon Guben & Inouye is preparing a Second and Final Fee Application.

### F.     DISCLOSURES REQUIRED UNDER 11 U.S.C. SECTION 1129(a)(5)

Section 1129(a)(5) of the Bankruptcy Code mandates that the plan proponent disclose the identity and affiliations of any known individual proposed to serve, after confirmation of the plan, as an officer or director of the debtor, and further requires the disclosure of the identity of any insider to be employed or retained by the debtor and the nature of compensation to be paid to such insider.  See 11 U.S.C. § 1129(a)(5).  As set forth in the Plan, the Debtors will select a Trustee, with court approval, and the Trustee will be the Trust's initial employee.

If Hannan's exit financing of $500,000.00 is approved, the Trust will receive $25,000.00 if the Plan is confirmed and a trustee for the Trust will be named. The name and selection of the Liquidating Trustee will be made before the Effective Date of the Plan or a date approved by the Court.

### G. THE PLAN SATISFIES THE BEST INTERESTS TEST OF 11 U.S.C. § 1129(a)(7)

Section 1129(a)(7)(A) of the Bankruptcy Code requires, with respect to each impaired class, that the holder of each claim or interest has either accepted the plan or will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were to be liquidated under chapter 7 of the Bankruptcy Code. See 11 U.S.C. § 1129(a)(7)(A).

The Joint Prosecution Agreement and Amended Prosecution Agreement provides that the creditors will receive proceeds from the following cases:

(1) *Hannan Ribiyou Kabushikigaisha v. Personal Representative of the Estate of Hisashi Teddy Uehara, et al.*, Civil No. 20-0000198 *(First Circuit Court, State of Hawaii* (the "HUFTA Action") (60/40% allocation);

(2) *Hannan Ribiyou Kabushikigaisha v. Personal Representative of the Estate of Hisashi Teddy Uehara, et al., No. 20-DCV-272740 (District Court for the 434th Judicial District of Fort Bend County, Texas)* (the "TUFTA Action") (60/40% allocation); and

(3) *In re Estate of Hisashi Uehara aka Hisashi Teddy Uehara, Case No. 20-CPR-034205 (District Court for the 434th Judicial District of Fort Bend County, Texas)* ("Probate");

(3) *AguPlus, LLC, et al. v. Finance Factors Limited, Adversary No. No. 20-90013 (Bankruptcy Court, District of Hawaii)* (the "FF Adversary"). All proceeds from avoided lien to Agu-V estate.

## H. THE PLAN SATISFIES THE 11 U.S.C. SECTION 1129(a)(8) ACCEPTANCE TEST

Section 1129(a)(8) requires that each class of claims or interest has accepted a plan or that such class is not impaired under a plan. See 11 U.S.C. § 1129(a)(8). A class that is not impaired is deemed to have accepted the Plan. The voting deadline was March 8, 2021. The secured creditor, Finance Factors, Limited, Class 1 voted to reject the Plan. The Class 2 creditor Hannan, as a former shareholder is not a § 1129(a)(10) qualified voter.

The Class 4 unsecured creditors accepted or rejected the Plan as provided for by 11 U.S.C. § 1126(c).

| Creditor | Class | Amount | Accept/ Reject |
|---|---|---|---|
| Hannan Ribiyou Kabushikigaisha | 4 | $2,630,000.00 | Accept |
| LCFRE Sugar Land Town Square, LLC | 4 | $127,582.92 | Accept |
| CPUS Mockingbird LP | 4 | $149,695.71 | Accept |
| REI Food Service, LLC | 4 | $135,733.23 | Reject |
| REI Food Service, LLC | 4 | $34,010.12 | Reject |
| St. Louis Alumni Association | 4 | $72,265.69 | Accept |

The Plan is accepted since the Plan satisfied the amount of 2/3 in amount voting to accept the Plan, $349,542 out of $519,285 or 67.3% of the

amount voting for the Plan, and three (3) creditors accepting, out of five (5) Class 4 voting creditors, satisfies the numerosity test required by § 1126(c).

The Ballot of St. Louis Alumni Association was submitted on March 9, 2021, one day after the March 8, 2021 date to submit a Ballot. The Debtors have filed a Rule 9006(b)(1) motion to enlarge the time to file the Ballot. That Rule 9006(b)(1) motion will be heard before the confirmation, and is a condition of confirmation. The Motion to Approve Enlarging Time to Accept Ballot for Accepting or Rejecting Plan of Reorganization is scheduled for March 15, 2021.

## I. PRIORITY CLAIMS ARE TREATED APPROPRIATELY: 11 U.S.C. § 1129(a)(9)

Section 1129(a)(9)(B) requires that priority and administrative claims be treated in accordance with that Code's provision unless the holder of a priority claim consents to a less favorable treatment. See 11 U.S.C. § 1129(a)(9)(B). The Plan provides for treatment of priority and administrative claims in accordance with section 1129(a)(9)(B) will be paid according to the Code, in full, within five (5) years of November 29, 2019.

The administrative claims are as follows:

| | |
|---|---|
| Internal Revenue Service | $114,000 |
| CW Associates (Dkt. Nos. 303 and 304) | $17,000 |
| O'Connor Playdon Guben & Inouye LLP | $250,000 |
| Office of the United States Trustee | $24,345 |
| Liquidating Plan | $25,000 |
| **Subtotal** | **$430,345** |

Filed Proof of Administrative Claims

| | |
|---|---:|
| State of Texas (POC No. 36) | $28,816 |
| State of Hawaii (POC No. 37) | 6,483 |
| State of Texas Sales Tax (POC No. 35) | 7,228 |
| City of Houston (POC No. 34) | 867 |
| Alief (Texas) Independent School District (POC No. 33) | 1,900 |
| Willow Fork (Texas) Drainage District (POC No. 32) | 185 |
| Fort Bend (Texas) county Levee Improvement District No. 2 (POC No. 31) | 117 |
| CPUS Mockingbird LP (POC No. 24) | 11,000 |
| LCFRE Sugar Land Town Square LLC (POC No. 18) | 2,286 |
| Aldine (Texas) Independent School District (POC No. 42) | 8,012 |
| **Subtotal** | **$67,990** |
| **TOTAL NON-HANNAN ADMINISTRATIVE CLAIMS** | **$498,335** |

Hannan has a superpriority administrative claim of $275,928. The total administrative exceeds the exit financing unless Hannan agrees to "other treatment," as provided for by § 1129(a)(9)(A).

## J. ACCEPTANCE BY AT LEAST ONE IMPAIRED CLASS: 11 U.S.C. § 1129(a)(10)

Section 1129(a)(10) of the Bankruptcy Code requires that at least one class of impaired claims has accepted the Plan, determined without including the acceptance of the plan by any insider holding a claim in such class. See 11 U.S.C. § 1129(a)(10). The Creditors in Class 4 (unsecured creditors), have accepted the Plan, as provided for by 11 U.S.C. § 1126(c), in terms of numerosity, three (3) out

of five (5) and 67.3% of the total amount of the claims voting to accept the Plan.

**K.   THE PLAN IS FEASIBLE: 11 U.S.C. § 1129(a)(11)**

Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that confirmation of the plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor <u>unless such liquidation is provided for in the plan</u>.  <u>See</u> 11 U.S.C. § 1129(a)(11).  The feasibility requirement is satisfied by a showing of a "reasonable probability of success" in terms of the litigation.  *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1364 (9th Cir. 1986).  "'Success need not be guaranteed .... the mere potential for failure of the plan or the prospect of financial uncertainty is insufficient to disprove feasibility.'"  *In re Sagewood Manor Associates Limited Partnership*, 223 B.R. 756 (Bankr. D. Nev. 1998) (citations omitted).

The Debtor proposes to satisfy the monetary aspects of the plan in two ways. First, the Debtor proposes to pay the administrative claims by way of Exit Financing from Hannan.  Second, the JPA and Amended JPA and the law firm of Goodsill Anderson Quinn & Stifel are to prosecute the litigation described in the JPA and Amended JPA, with the allocation to the estates, as per the JPAs.

**L.   PAYMENT OF FEES: 11 U.S.C. § 1129(a)(12)**

Section 1129(a)(12) of the Bankruptcy Code requires that all fees payable pursuant to section 1930 of title 28, as determined by the Court at the confirmation hearing, have been paid or that the plan provide for the payment of all

such fees on the effective date of the plan.  <u>See</u> 11 U.S.C. § 1129(a)(12).  The Plan and Exit Financing provides that any fees described under 28 U.S.C. § 1930(a)(6) (which is defined as an Administrative Expense Claim) shall be paid (a) on or as soon as reasonably practicable following the later to occur of (1) the Effective Date of the Plan and (2) the date on which the Bankruptcy Court order allowing such Claim becomes a Final Order; or (b) upon such other terms as may be mutually be agreed upon between such holder of an Administrative Claim and the Debtor. <u>See</u> 11 U.S.C. § 1129(a)(12).  The Debtor will move pursuant to Rule 3022, F.R.Bk.P. to close the case, provided all statutory obligations, including the quarterly fees of the United States Trustee are paid at the time of the order closing the case.  The funds to pay the § 1129(a)(12) fees are from the Exit Financing.

Section 1129(a)(13) requires a plan provide for the continuation of retiree benefit payments under a plan.  <u>See</u> 11 U.S.C. § 1129(a)(13). However, the Debtor is not aware of any retiree benefits within the meaning of section 1114 of the Bankruptcy Code for which the Debtor is obligated.

## M. THE PLAN HAS BEEN ACCEPTED BY AN IMPAIRED CLASS AND SATISFIES 11 U.S.C. § 1129(a)(8)

The ultimate test of any plan is its acceptance by an impaired Class. The impaired Class 4 unsecured creditors, accepted the Plan, as provided by § 1126(c), three (3) of the five (5) voting creditors accepted the Plan and 67.3% of the amounts voting accepted the Plan.  The Plan satisfies 11 U.S.C. § 1129(a)(8).

U.S. Bankruptcy Court - Hawaii   #19-01528   Dkt # 504   Filed  03/10/21   Page 22 of 27

### N. THE PLAN PROVIDES FOR SUBSTANTIVE CONSOLIDATION PURSUANT TO 11 U.S.C. § 1123(A)(5)(C)

The Plan provides for the merger or consolidation of estates.[6] One of the most comprehensive discussions of substantive consolidation appears in 2 *Collier on Bankruptcy*, ¶ 105.09 at pp. 105.93 to 105-112 (16th 2021).[7]

---

[6] One Commentator writes *5 Collier on Bankruptcy, ¶ 1123(a)(5)(C) at p. 1123-12 (16th ed. 2020)*,

> Section 1123(a)(5)(C) permits the merger of consolidation of the debtor with one or more persons. Thus, a debtor corporation may be liquidated in chapter 11 or may be merged or consolidated with one or more other corporations under a plan. Furthermore, court have held that Section 1123(a)(5)(C) "expressly authorizes substantive consolidation," finding that "substantive consolidation is often ordered by United States bankruptcy courts."[33]

---

[33] *In re OAS S.A.,* 2015 Bankr. LEXIS 2302 (Bankr.S.D.Y. July 13, 2015) (*citing In re Stone & Webster, Inc.,* 286 B.R. 532, 546 (Bankr.D.Del. 2002)*,* and *Union Sav. Bank v. Augie/Restivo Baking co., Ltd. (In re Augie/Restivo Baking Co., Ltd.),* 860 F.2d 515, 518-20 (2d Cir. 1988)).

[7] As *2 Collier* notes at § 105-101.02, one of the two tests which determine "substantive consolidation" is as follows:

> A second group of substantive consolidation elements, which are cited in some of the more recent cases, appears in *In re Vecco Construction Industries, Inc.,* 4 B.R. 407, 410 (Bankr.E.D.Va. 1980)*,*
>
> (1) The degree of difficulty in segregating and ascertaining individual assets and liabilities;
>
> (2) The presence or absence of consolidated financial statements;
>
> (3) The profitability of consolidation at a single physical location;
>
> (4) The commingling of assets and business functions;

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 504  Filed  03/10/21  Page 23 of 27

In the leading Ninth Circuit case, _In re Bonham_, 229 F.3d 750, 765, n.10 (9th Cir. 2000), the Ninth Circuit panel noted with respect as to the factors supporting substantive consolidation.

> Courts have noted a non-determinative list of factors that a court should consider in determining whether a proponent of substantive consolidation has established a prima facie case for substantive consolidation. _See, e.g., Eastgroup_, 935 F.2d at 249-50 (citing _In re Vecco Construction Indus._, 4 B.R. 407, 410 (Bankr.E.D.Va.1980)). These factors include: (1) the presence or absence of consolidated financial statements; (2) the unity of interests and ownership between various corporate entities; (3) the existence of parent and intercorporate guarantees on loans; (4) the degree of difficulty in segregating and ascertaining individual assets and liabilities; (5) the existence of transfers of assets without formal observance of corporate formalities; (6) the commingling of assets and business functions; (7) the profitability of consolidation at a single physical location. _See In re Vecco Constr._, 4 B.R. at 410. _See also Fish v. East_, 114 F.2d 177 (10th Cir.1940) (listing 10 factors relevant to substantive consolidation); _Pension Benefit Guar. Corp. v. Ouimet Corp._, 711 F.2d 1085, 1093 (1st Cir.1983); _In re Luth_, 28 B.R. 564, 566-67 (Bankr.D.Idaho 1983).

---

(5) The unity of interests and ownership between the various corporate entities;

(6) the existence of parent and inter-corporate guarantees on loans; and

(7) The transfer of assets without formal observance of corporate formalities.

Citing in _In re Silken Mfg. USA, Inc._, 2013 Bank. LEXIS 4060 (Bank.S.D.Ca. September 19, 2013) at 6*, n.4.

U.S. Bankruptcy Court - Hawaii  #19-01529  Dkt # 504  Filed  03/10/21  Page 24 of 27

The activities of AguPlus and Agu-V and Hisashi Uehara satisfy the seven factor test of *Vecco Constr.*, as cited by the *Bonham* court, for the substantive consolidation of the estates of AguPlus and Agu-V.

### O. THE PLAN MAY BE APPROVED PURSUANT TO 11 U.S.C. § 1129(B)(2)

The largest secured claimant, FF voted against confirmation of the Plan. A Plan may be confirmed over the objections of a senior secured creditor, FF, if the Plan satisfies § 1129(a)(8).

FF in its ballot objecting to the claim, stated a claim of $1,298,999.25 plus attorney's fees and interest since November 19, 2019. However, in this case, the claim of FF is subject to the proceedings in Adv. Proc. No. 20-90013, scheduled for an August 2021 trial. The amount FF will receive on its claim depends on the outcome of the Adv. Proc. No. 20-90013.

Until there is a resolution of Adv. Proc. No. 20-90013, there is on deposit at First Hawaiian Bank, $1,545,347.00 subject to this Court's jurisdiction, awaiting the adjudication in Adv. Proc. No. 20-90013, and § 1129(b)(2)(A)(i)(II).

In addition to § 1129(b)(2), as part of the "fair and equitable" test, is the "absolute priority" rule. See 7 *Collier on Bankruptcy, ¶ 1129.03[4][1](i) (16th ed. 2021)* and *Case v. Los Angeles Lumber, 308 U.S. 106 (Douglas, J)*, requires that the higher class must be paid before the lower class, if not in full, then funds are available for satisfaction of the senior class.

In *In re Johnston*, 21 F.3d 323 (9th *Cir. 1994)*, the court discussed the treatment of senior classes and the payment of junior classes, or the transfer of assets to the junior claim.  In *Johnston*, the Ninth Circuit panel read the "absolute priority" rule,

> … we reiterate here: before the holder of a junior claim, which, of course, must include the debtor itself, can receive or retain property of the estate, a bankruptcy court must be satisfied that each unsecured senior claimant actually will receive full present payment, or its equivalent, under the plan of reorganization.
>
> Here, the bankruptcy court's uncontested findings that all claims will be paid in full plus interest; that the value of Johnston's assets substantially exceeds the amount of Johnston's liabilities; that Johnston is more likely than not to perform his plan obligations; and that the plan is feasible; ensuring that unsecured creditors of the estate will be paid in full with interest; assures that the requirements of the absolute priority rule are met. Absent such findings, which, as we stated, are here tantamount to actual payment, we could not hold that senior class members were "provided for" by the Johnston plan. Hence, we hold that the § 1129(b)(2)(B) requirement of absolute priority has been satisfied, and has not been violated by permitting Johnston under the plan to retain rights in the estate property.

In the case at bar, both prongs of § 1129(b)(2) are satisfied,

(1)    the reserved $1,545,347.34 is for the satisfaction of FF secured claim and for no other purposes and should provide full payment to FF, as subject to the results in Adv. Proc. No. 20-90013.

(2)    the "absolute priority" rule is satisfied insofar as junior creditors and beneficiaries of the Liquidating  Trust may be paid or "receive

U.S. Bankruptcy Court - Hawaii   #19-01529  Dkt # 504   Filed  03/10/21   Page 26 of 27

property of the estate by way of litigation proceeds now because of the $1,545,347.34 on deposit for the benefit of FF, which satisfies the "absolute and priority" test in the _Johnston_ case.

On this basis, the Plan can be "crammed" down on dissenting secured creditor FF, if there is one impaired class voting to accept for the Plan, as per § 1126(c).  Since the Class 4 creditors have accepted the Plan, the Debtors may "cramdown" the Plan on FF.

## IV.     CONCLUSION

WHEREFORE, based on 11 U.S.C. § 1126(c), the Plan was accepted by an impaired class, Class 4, and the Plan Proponent ask for confirmation of the Chapter 11 Plan based on the satisfaction of the § 1129(a) requirements.

DATED:  Honolulu, Hawaii, March 10, 2021.

_/s/ Jerrold K. Guben_
JERROLD K. GUBEN
Attorney for Debtors
and Debtors-in-Possession,
AGUPLUS, LLC and AGU-V, INC.

U.S. Bankruptcy Court - Hawaii   #19-01529  Dkt # 504   Filed  03/10/21   Page 27 of 27